Grosvenor *v.* The Atlantic Fire Insurance Company of Brooklyn.

make a new roll in the case of imperfect descriptions of land was, in the first place, to make the description certain and then to make such other alterations as the change of circumstances occasioned by the lapse of time had rendered necessary. They are required to make a perfect roll, and to do so they must charge the individuals with the assessment whom they find to be the owners when the new roll is made.

It was not necessary for the defendant to prove that the plaintiff had become the owner of the land. If he lived in the city, and it is not asserted that he did not, the council had jurisdiction in the case, and the exercise of that jurisdiction cannot be questioned in an action of tort. The council determined, in a case within their jurisdiction, that the plaintiff as the owner of this land was personally liable for this tax. That is sufficient for their protection and for the protection of the corporation of which they were officers.

The judgment of the Supreme Court should be reversed.

PRATT and ROOSEVELT, Js., concurred in this opinion.

Judgment affirmed.

---

GROSVENOR *v.* THE ATLANTIC FIRE INSURANCE COMPANY
OF BROOKLYN.

Where a fire policy names the owner of the property as the person insured, and declares the damages in case of loss to be payable to another person therein named as mortgagee, the latter cannot recover in case of a breach of the conditions of the policy by the mortgagor.

In such case, the contract is with the mortgagor, and for the insurance of his interest, and the mortgagee can recover only where the mortgagor could have done so, had the money been payable to himself instead of being payable for his benefit to the mortgagee.

The cases of *The Traders' Insurance Company* v. *Robert* (9 *Wend.*, 404), and *Tillou* v. *The Kingston Mutual Insurance Company* (1 *Seld.*, 406), so far as it follows the former, overruled.

APPEAL from the Superior Court of New-York City. The action was upon a policy whereby the defendant did "insure Eugene W. McCarty against loss or damage by fire, to the amount of $7,000 on his brick dwelling house, &c., until November 14, 1854. Loss, if any, payable to Seth Grosvenor, mortgagee." The policy contained a condition that in case of any transfer, or termination of the interest of the assured in the property insured or in the policy, either by sale or otherwise, without the consent of the company manifested in writing, the policy should from thenceforth be void. At the trial before Mr. Justice SLOSSON and a jury, the plaintiff proved the policy, the loss and the service of preliminary proofs thereof. He then proved a mortgage of the insured property made by Eugene Mc Carty to Edward Kellog, and its assignment by the latter to the plaintiff before the date of the policy. The defendant's counsel offered to prove, and the plaintiff's counsel admitted it to be true, that in January, 1854, one month before the fire, McCarty, the person named in the policy as the assured, sold and conveyed the property therein described to one Bostwick. The judge decided that the evidence was inadmissible, and the defendant's counsel excepted. A verdict was rendered for the plaintiff, subject to the opinion of the court at general term, and judgment having been ordered for the plaintiff, the defendant appealed to this court.

*William C. Noyes*, for the appellant.

*Daniel Lord*, for the respondent.

HARRIS, J. The contract of insurance is a contract of indemnity. To sustain an action upon such a contract, it must appear that the party insured has sustained a loss. This involves the necessity of an insurable interest at the time of the alleged loss. Without such interest, the party insured cannot be damnified.

Grosvenor *v*. The Atlantic Fire Insurance Company of Brooklyn.

In this case, the contract was between the defendants and McCarty. The agreement was to insure Eugene W. McCarty against loss or damage by fire, to the amount of $7,000, on his three story brick dwelling-house. But after the contract was made, and before the alleged loss, McCarty had sold and conveyed the property insured. At the time of the fire he had no insurable interest; of course, he has no claim for indemnity. No action, therefore, could be maintained upon the policy by McCarty.

But at the time the insurance was effected, the plaintiff in this action, Grosvenor, was the holder of a mortgage upon the premises insured. As such mortgagee, he, too, had an insurable interest. The extent of that interest was the amount of his debt. To that extent he might have contracted with the defendants to indemnify him against loss by fire. The payment of his debt would as completely terminate the contract to insure as would the alienation of the property, when the contract is made with the owner.

The important inquiry in this case is, to which of these classes does the contract in question belong? The action is brought by the plaintiff as mortgagee. The contract was made with McCarty, the mortgagor. But the policy provides that in case of loss, such loss should be payable to the plaintiff. What is the legal effect of this provision? Without it the plaintiff could have had no claim against the defendants for indemnity. Is this provision to be regarded as an appointment of the plaintiff to receive any money which might become due from the insurers by reason of any loss sustained by the mortgagor, or has it the effect to render the policy, which would otherwise be a contract to indemnify the mortgagor against a loss, a contract to indemnify the mortgagee? A determination of this question will also determine the rights of the parties to this action.

Were it not for one or two decisions in this state bearing upon the question, I should have little difficulty in pronouncing in favor of the former of these propositions. It seems to

me to be very clear that it was the intention of all the parties that the interest of the mortgagor, and not that of the mortgagee, should be insured. It is stated in the policy that the property insured is the property of McCarty, and that he is the person insured. McCarty paid the premium. He made the contract. His interest as owner, and not that of the plaintiff as mortgagee, was the subject of the insurance. The plaintiff was merely the appointee of the party insured to receive the money which might become due him from the insurers upon the contract. The provision in the policy in this respect had no more effect upon the contract itself than it would if it had been provided that the loss for which the insurers should become liable should be deposited in a specified bank to the credit of the party insured.

Suppose that the plaintiff, although described in the policy as a mortgagee, had, in fact, held no mortgage, could it be pretended that the defendants might have avoided the policy on the ground that the plaintiff had no insurable interest? Or, suppose again, that after the contract had been made, the mortgage had been paid, could it be claimed that the contract to insure had also ceased? I presume none will deny that, in either case, the contract would have continued in force for the benefit of the owner of the property insured. If so, it must have been because the interest of the mortgagor, and not that of the mortgagee, was the thing insured. I agree with the court below that "there is nothing in the language of the policy on which the court can adjudge that in legal effect it is a contract insuring the interest of the mortgagee as such, except in the provision which declares that the loss, if any, which occurs under the contract insuring the mortgagor's interest, shall be payable to the mortgagee. That provision merely designates a person to whom such loss is to be paid, and shows that he is a person who may have an interest in its being so paid."

The undertaking to pay the plaintiff was an undertaking collateral to and dependent upon the principal undertaking

to insure the mortgagor. The effect of it was, that the defendants agreed that whenever any money should become due to the mortgagor upon the contract of insurance, they would, instead of paying it to the mortgagor himself, pay it to the plaintiff. The mortgagor must sustain a loss for which the insurers were liable, before the party appointed to receive the money would have a right to claim it. It is the damage sustained by the party insured, and not by the party appointed to receive payment, that is recoverable from the insurers. (*Macomber* v. *The Cambridge Mutual Fire Ins. Co.*, 8 *Cush.*, 133.) The insurance being upon the interest of the mortgagor, and he having parted with that interest before the fire, no loss was sustained by him, and, of course, none was recoverable by his assignee or appointee. The right of such a party being wholly derivative, cannot exceed the right of the party under whom he claims. (*Carpenter* v. *The Providence Washington Ins. Co.*, 16 *Peters*, 495; *Foster* v. *The Equitable Fire Ins. Co.*, 2 *Gray*, 216).

I agree with the learned judges who delivered opinions upon the decision of this case in the court below, that there is no just ground for discrimination between this case and that of an assignment of the policy to a mortgagee to be held by him as collateral security for his debt, with the consent of the insurer. In either case the insurance is upon the interest of the mortgagor. The terms and conditions upon which indemnity may be claimed are agreed upon, and then the original parties further agree that when, by the terms and conditions of the contract, the insurers shall become liable by reason of a loss sustained by the party insured, the money shall be paid, not to the party who has sustained the loss, but to his appointee or assignee for his benefit. Such an appointment or assignment ought not to be construed so as to vary, in any respect, the liabilities of the insurers upon their original contract. It is certainly true, as was said by Mr. Justice WOODRUFF, that " when applied to other agreements for the payment of money, an assignment does no

more than direct to whom it shall be paid when it shall become due."

The case of *The Traders' Ins. Co.* v. *Robert* (9 *Wend.*, 404), was, in my judgment, erroneously decided, and unless by subsequent recognition or acquiescence, it has become so securely imbedded in the law of this state that it may not be disturbed, it ought not to be followed. It was a condition of the policy in that case, that it should cease if the assured should effect a further insurance upon the property, and should omit to give notice of such further insurance within a reasonable time. The policy in question was assigned to a mortgagee with the assent of the insurers. After this assignment, the party insured effected a further insurance with another company and neglected to give the requisite notice. It was held that the action being brought by the assignee of the policy, though in the name of his assignor, no act of the latter after the assignment, could be allowed to prejudice the rights of the former. The argument by which this result was reached, seems to me to have been singularly illogical and inconclusive. Indeed, it depends entirely upon the misapplication of a very familiar principle: " Had the nominal plaintiff executed a release to the insurance company," say the court, " it would have no effect upon the rights of the assignee ; and if he could not directly discharge the right of action which he had assigned, surely he cannot do it indirectly. The fact, therefore, of his having effected a subsequent insurance upon the same premises, can have no influence upon the rights of the real plaintiff in this suit." It is quite obvious, I think, that the learned judge who delivered the opinion, entirely failed to discriminate between acts done for the purpose of discharging the liability of the insurers upon their contract, and acts which, by the terms of the contract, were necessary in order to continue such liability. All will agree in the soundness of the premises upon which the argument is founded. It is true that the assignor of a right in action cannot indirectly, any more

than he can directly, do any thing which will discharge the liability of the other contracting party to his assignee. But it is equally true, that where such liability is, by the terms of the contract, made to depend upon the performance of an act by the assignor, an assignment of the contract will not operate to dispense with the performance of the act as a condition of liability. It had been stipulated between the contracting parties, that if the assured should effect a further insurance and should omit to give notice to the insurers of such further insurance, the whole contract should be at an end. This was the condition upon which the insurers were to continue liable. It was no less a condition after the assignment than before. The assignee took the contract with knowledge that it might be avoided by a failure to perform this condition. The inference of the court, therefore, that because the assignor of a right in action cannot, directly or indirectly, release such right of action to the prejudice of his assignee, the fact that subsequent to the assignment of the policy, the assignor effected a further assurance without giving notice as required by the terms of the policy, could have no influence upon the rights of the assignee, is not justified.

Again, it is said by the court, in *The Traders' Ins. Co.* v. *Robert*, that " after the assignment of the policy to Bolton, the mortgagee, Robert, in whose name it was originally taken, had no interest in it, and that the rights of the parties were the same as if the policy had been given to Bolton." This, too, is an obvious error. Robert was as much interested in the policy after he had assigned it to his creditor as before. The money for which the insurers might become liable was to be applied to his use. The only effect of the assignment was to make a specific appropriation of the money beforehand to the payment of a specific debt. The insurance was for the benefit of the owner of the property by whom it was obtained, but it was convenient for him, as in the case now in hand, to appoint the particular creditor

who should receive the money in case of a loss.    The real interest of the party insured remained unchanged.

From the judgment of the Supreme Court in *The Traders' Ins. Co.* v. *Robert,* there was no appeal.    The decision was suffered to become the law of the case.    There stood upon the records of the court an absolute, unimpeachable and irreversible judgment in favor of Robert against the insurance company.    The legal title to the judgment was in Robert.    A contingent, equitable interest was vested in Bolton, the assignee of the policy.    That interest was extinguished by the payment of the debt, to secure which it had been assigned.    Thus the entire equitable as well as legal right to the judgment became united in Robert the plaintiff.    Under these circumstances, the Supreme Court, as though aware of the injustice which its decision was likely to work out, made an order, upon motion of the defendant in the judgment, staying all further proceedings thereon, thus, practically, reversing their own judgment in the case.    This order was reversed by the Court for the Correction of Errors, and, in my judgment, very properly. The decision was put upon the ground that, as a valid judgment had been obtained upon the policy, the payment by Robert of the debt to Bolton, for the security of which the policy had been assigned, " had no other effect than to bring back to him that interest in the policy which he had assigned, and, of course, the interest also in the judgment which had been obtained upon the policy. (*Robert* v. *The Traders' Ins. Co.,* 17 *Wend.,* 631.)

Were the question left here, I should have little hesitation in saying that the judgment of this court ought not to be controlled by the decision in *The Traders' Ins. Co.* v. *Robert.* But the same question was before this court in *Tillou* v. *The Kingston Mutual Ins. Co.* ( 1 *Seld.,* 405 ), and was disposed of in a similar way.    In that case the insurance had been effected by three partners and the policy had been assigned to a mortgagee of the premises to secure his debt.    After-

wards, one of the partners sold out and released to his co-partners his interest in the property insured. A loss having occurred, an action was brought upon the policy in the name of all three of the partners. The action was defended on the ground that the policy had been rendered void by the alienation. The Supreme Court held that the transfer of the interest of one partner to his co-partners was not such an alienation of the property as would avoid the policy. Judgment was accordingly rendered against the company for the full amount of the loss. The case being brought into this court upon appeal, it was held here, upon the authority of *Murdock* v. *The Chenango County Mutual Ins. Co*, (2 *Comst.*, 210), that the plaintiffs could not recover for their own benefit on the ground that one of the plaintiffs had no interest in the action.

The question now before the court was decided entirely upon the authority of *Robert* v. *The Traders' Ins. Co.*, and I think I may be allowed to add, without much consideration. The learned judge who pronounced the opinion of the court, though he had been the successful counsel in the case of *Robert* v. *The Traders' Ins. Co.*, evidently misapprehended the value of that case as an authority, for he says, after stating the point decided by the Supreme Court, that "the case afterwards came in a different form before the court for the correction of errors, and that court recognized, approved and substantially affirmed the judgment." In this I think he was mistaken. I have already noticed the circumstances under which the case came before the court of errors, and shown that the question now under consideration had already passed beyond the reach of that court. Had it not been so, the report of the case furnishes strong ground for the belief that the result would have been different.

The learned judge, further to sustain the authority of *Robert* v. *The Traders' Ins. Co.*, and to show that the question ought to be regarded as closed against further consideration, proceeded to say, that the case had already been twice

noticed by this court, and each time with approbation.    In support of this statement, he refers to *Conover* v. *The Mutual Ins. Co. of Albany* (1 *Comst.*, 293), and *Murdock* v. *The Chenango Mutual Ins. Co.*, above cited.    In the former of these cases, Judge T. A. JOHNSON, in delivering the opinion of the court, says : "We are not called upon to decide whether the absolute alienation by Conover, after the assignment of the policy, is a good defence.    The point was not raised on the trial.    But if we were, I do not see how the interest of the assignee could be effected by it."    He then cites *The Traders' Ins. Co.* v. *Robert* (9 *Wend.*, 404).    Such a notice of an authority, it seems to me, can add but little to its judicial efficacy.    In the other case, the approbation is still more faint.    Indeed, I construe it into positive disapprobation. Judge CADY, who alone alluded to this authority, says "it may well be doubted whether the court in that case did not go too far in order to protect the assignee."

Thus the question stands upon authority.    *Tillou* v. *The Kingston Mutual Ins. Co.*, contains the only adjudication upon the point in this court.    Of that case, it is not too much to say, that it was decided without much examination, the court relying chiefly upon the authority of *Robert* v. *The Traders' Ins. Co.*    The value of that case as a precedent, was, as I have attempted to show, entirely over-estimated. Believing as I do, that it was decided upon mistaken views of the law applicable to the question involved, and that the decision of the Supreme Court never had the sanction of the Court for the Correction of Errors, and that the case in this court was determined upon a misapprehension of what had before been adjudged, I regard the question as yet open for the consideration of this court.

Upon the merits of the question, I have already sufficiently expressed the convictions of my own judgment.    The defendants contracted with McCarty, and not the plaintiff. They agreed, upon the performance of certain conditions, to pay for him to the plaintiff certain money.    Some of

these conditions were positive in their character; others negative. Certain things were to be done by the assured, and other things were not to be done. If all these conditions were performed, then, if a loss occurred, the defendants agreed to indemnify him against that loss, to the extent specified in the policy, and he appointed the plaintiff, his creditor, to receive from the defendants the amount for which they were thus contingently liable. The terms of this contract have never been waived, relaxed or modified. The defendants have shown an express violation of one or more of the conditions upon which their liability was to depend. And yet it has been adjudged, although it is evident that it has been done with reluctance and against the better judgment of the court making the decision, that the proof of these violations constituted no defence to the action.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Roosevelt, J., dissented; Selden and Strong, Js., concurred in the reversal, distinguishing this from the case where a policy is assigned with the assent of the insurers to a mortgagee; they were of opinion that in such case a privity of contract exists between the mortgagee and insurers, and the doctrine of *The Traders' Insurance Company* v. *Robert* should be maintained.

Judgment reversed, and new trial ordered.