Denio, J.
It is a principle in the law of marine insurance, that an abandonment upon a total loss must be entire and absolute, and must cover the whole interest insured, so that the insurers may have the benefit of such indemnity as the circumstances will permit. (Arnould on Ins., 1159.) In the case of *182 an actual, as distinguished from a constructive total loss, this principle would not be important; but it would be very material where it was constructive only, and a portion of the property was saved. It has accordingly been held, in a ease in Massachusetts, that if the assured, by mortgaging his ship, has voluntarily deprived himself of the power of conveying an absolute title, he cannot abandon to the underwriters, but can recover only for the damage he has actually sustained as a-partial loss. (Gordon v. Massachusetts Fire and Marine Ins. Co., 2 Pick., 249; Amould on Ins., 1161.) It was in reference, I presume, to this principle, that the insurers in this case inserted the warranty against liens contained in their policy. Being placed on the footing, of a warranty, the existence of liens, contrary to the spirit of the contract, has a much more prejudicial effect upon the interests of the assured than the principle of law which I have mentioned; as the doctrine upon that subject is, that the validity of the entire contract depends upon the literal truth or fulfillment of the warranty. (Arnould, 577.)
The existence of the two prior mortgages mentioned in the bill of exceptions would seem, therefore, to be fatal to the recovery in this case, unless the answer given by the plaintiff’s counsel avoids the objection. He argues that the contract of insurance was, in fact and in judgment of law, between the plaintiff and the defendants, and that the subject insured was the plaintiff's interest as a mortgagee; and as that interest was, when created, a mortgage upon Crocker’s equity of redemption in the vessel, and was as absolute and as free from any lien or incumbrance at the time of the loss as when it was originally created, the warranty respecting liens, if it was applicable at all to the case, was true when made, and was never afterwards broken. There is much greater latitude in applying a policy of insurance to the interest intended to be covered than in other written contracts; and, in general, if it is said to be on the account of a person as agent, or of one for the owner, or for whom it may concern, the party who really procures the *183 insurance, and whose property it was intended to cover, may be shown. (Arnould, 25, in the notes; Boston ed., 1850.)
The admission in the answer is quite consistent with the position that Crocker was insured as the owner of the vessel, and that the provision for the payment to the plaintiff in case of a loss was simply the consequence of an arrangement between Crocker and the plaintiff, that the latter should have the avails of Crocker’s contract in case a loss should take place.
The case of Grosvenor v. Atlantic Fire Insurance Company of Brooklyn (17 N. Y., 391), seems to me to be a very strong authority against the plaintiff, and to be quite conclusive upon the case. McCarty was named as the party insured; but it was added that the loss, if any, was to be paid “to Grosvenor [the plaintiff], mortgagee." The intent to secure him in his character as mortgagee was as strong as, upon the admission in the answer, it was in this case to secure the plaintiff as the holder of the chattel mortgage; but it was decided that the contract was between McCarty and the insurance company, and that it was McCarty’s house, and not Grosvenor’s interest, which was insured; and it was accordingly held, that a breach of the conditions of the policy by McCarty was fatal to the recovery. In conformity with this judgment, we are obliged to hold, in this case, that this policy was upon the vessel, and not upon the mortgage interest, and that Crocker, and not the plaintiff, was the party insured. It follows from this, that the liens which were warranted against, were upon the subject insured, and, hence, that they constituted a breach of an express warranty.
The result of this view of the case is, that the judgment of the Superior Court of Buffalo was erroneous, and that it should be reversed and a new trial awarded.
All the judges concurring,
Judgment reversed, and new trial ordered.