## Case No. 1,101.

### BATES v. EQUITABLE FIRE & MARINE INS. CO.

[3 Cliff. 215.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1868.[2]

FIRE INSURANCE—BREACH OF CONDITION—TRANSFER OF POLICY—CONSENT OF COMPANY.

1. A stock of sugars was insured under a time-policy, which contained the condition that if the property should be sold or conveyed in whole or in part, or if the policy should be assigned without the consent of the company, the risk should cease; but if the assured should sell the property, or part thereof, before the expiration of the policy, the same might be continued for the benefit of the purchaser, if the company gave their consent, to be evidenced by a certificate of the fact or by indorsement on the policy. Shortly after the date of the policy the assured sold the property to the plaintiff, and on the day of the completion of the delivery indorsed the policy to him as follows: "Payable in case of loss to Edward C. Bates." The policy was sent to the defendants with the request that they would approve the indorsement. It was approved in the following terms: "Consent is hereby given to the above indorsement." At the time of the loss the plaintiff had on hand a quantity of sugars equal to that which was owned by the assured at the date of the policy. *Held*, that the indorsements on the back of the policy were not a compliance with the conditions of the policy in case of sale. Under those conditions the policy would not continue for the benefit of a purchaser, and the consent of the company to the change of ownership must be evidenced substantially as required in the conditional clause.

[Cited in Sias v. Roger Williams Ins. Co., 8 Fed. 188.]

[See note at end of case.]

2. Upon sale of the property without the antecedent consent of the company the risk ceased, and the policy became void, unless the consent of the company thereto was subsequently obtained.

[Cited in Sias v. Roger Williams Ins. Co., 8 Fed. 188.]

3. The purchase was made, but the consent of the company to the transfer was not obtained, and they had no notice of it prior to the loss. They consented, in case the property of the assured was destroyed, they would pay the amount to the plaintiff, not that the policy should continue for the benefit of any one other than the insured.

[Cited in Sias v. Roger Williams Ins Co., 8 Fed. 188.]

[See note at end of case.]

[At law. Action by Edward N. Bates against the Equitable Fire & Marine Insurance Company.] Assumpsit upon a policy of insurance. Plea the general issue, and verdict for the plaintiff, subject to the opinion of the court upon questions of law, reserved at the trial. [Verdict set aside. This was afterwards affirmed by the supreme court in Bates v. Equitable F. & M. Ins. Co., 10 Wall. (77 U. S.) 33.]

The policy was dated October 11, 1861, and it was issued to William D. Philbrook in the sum of $3,000, for one year from date, on a stock of sugar, raw, wrought, and in process, contained in the frame building, with composition roof, occupied by the assured, for refining sugar, situated on Sargent's wharf, in Boston, Mass. The terms of the policy material to be noticed were, "that if the situation of the property or the circumstances affecting the risk should be during the existence of the policy altered or changed, by or through the advice, consent, or agency of the assured, or if said property should be sold, or conveyed in whole or in part, or if the policy should be assigned, without the consent of the company, . . . . then, and in every such case, the risk assumed should cease, and the policy become void. But the company agreed that if the assured should sell the property, or any part thereof, before the expiration of the policy, a proportion of the premium received should be repaid, upon receiving notice of such sale, before loss, reserving, however, three months' premium on the sum insured, over and above the amount which would be due at the time of receiving such notice; or the policy might continue for the benefit of such purchaser if the company gave their consent thereto. Consent was to be evidenced by a certificate of the fact or by indorsement on the policy. The execution of the policy was admitted, and the evidence showed that the assured was at that date the owner of $60,000 or $70,000 worth of sugars on that wharf, of the description specified in the policy. Shortly after the date of the policy the plaintiff purchased the sugars of the assured, and the same were all delivered to him, pursuant to orders of the seller, on or before November 23 following. Delivery of the sugars to the plaintiff was completed on that day, and on the same day the assured indorsed the policy to the plaintiff in the terms following, to wit, "Payable in case of loss to Edward C. Bates," and signed the same and delivered the policy to the plaintiff. The proofs also showed, that he made the indorsement in pursuance of the contract of sale, and that the premium for the unexpired portion of the term of the policy was taken into account between the parties in making the contract. On the 28th of the same month the policy with the indorsement thereon, signed by the assured, was enclosed to the president of the company, requesting him to approve of the indorsement; and on the following day the policy was returned indorsed, "Consent is hereby given to the above indorsement," and the same was signed, "Equitable Insurance Company, Fred W. Arnold Secretary." Subsequent to the purchase and delivery of the sugars, the plaintiff carried on the business of refining sugars at that refinery, substantially in the same way that the business prior to that time had been conducted by his vendor, and at the time of the loss he had on hand a quantity of sugars equal to that which was owned by the assured at the date of his policy, and of the

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 10 Wall. (77 U. S.) 33.]

same descriptions. During the night of the 24th of February, 1862, the entire stock of sugars in that refinery was destroyed by fire. Due notice was given of the loss by the plaintiff on the following day, and two days later the defendants admitted the receipt of the notice, but declined to pay the amount, upon the ground that the assured ceased to be the owner of the property before the loss, and that they had never assented to any change of ownership in the property insured. They set up the same defence at the trial, but the court overruled it and directed a verdict for the plaintiff, reserving the question for further consideration.

E. Metcalf and C. B. Goodrich, for plaintiff. Geo. H. Browne, for defendants.

CLIFFORD, Circuit Justice. Time-policies upon a stock in trade, especially where they cover a considerable period of time, and where from the nature of the business it appears that the parties must have understood that the stock would be continually changing, apply to goods in the place of business from time to time, as purchases are made to supply the place of goods sold in the usual and regular course of business within the lifetime of the policy. 1 Phil. Ins. §§ 489–491; Ang. Ins. § 203; Lane v. Maine Mut. F. Ins. Co., 12 Me. 44; Hooper v. Hudson R. F. Ins. Co., 17 N. Y. 426.

Partial sales of the stock, therefore, under such a policy, if the vacuum is regularly supplied by new purchases of equal value, and of the same description of goods, will not render the policy void, even though the entire stock may change before the loss occurs. Unless the rule were so, a policy of insurance upon a stock in trade for any considerable period of time would cease to be an indemnity against loss. Such partial sales in the usual course of business are not prohibited by the terms of the policy in this case. Both parties knew that the sugars on hand were to be manufactured and that the product was to be sold, and that the unmanufactured sugars were to be supplied by new purchases to keep the stock good, and it is not pretended by the defendants that any such sales and purchases had the effect to impair the right of the assured to recover on the policy. On the other hand, the plaintiff concedes that in case of the sale of the property, such as was made by the assured to the plaintiff, the risk would cease and the policy become void, unless the company gave their consent thereto within the true intent and meaning of that condition in the policy. Whether conceded or not, it is clear that without such consent the policy would not continue, for the benefit of the purchaser, and it is equally clear that the consent, to be valid, must be evidenced substantially as required in that clause of the policy.

Parties make their own contracts, and courts are bound by their terms and conditions. The express words of the condition are, that "the policy (in case of a sale) may continue for the benefit of the purchaser if this company give their consent thereto," to be evidenced by a "certificate of the fact or by indorsement on this policy."

None of these views are directly controverted by the plaintiff, but he insists that the indorsement appearing on the back of the policy is a substantial compliance with the condition in that behalf, as before recited, which is the principal question between the parties.

Reference is made by the plaintiff to the case of Hooper v. Hudson River F. Ins. Co., 17 N. Y. 426, as supporting his views, that the indorsement on the policy in this case affords sufficient evidence that the defendants had notice that he had purchased the property of the assured. Careful examination of that case, however, will show that it is not analogous, and that it does not support the proposition as applied to the case before the court. The statement of the case shows that the entire stock in trade of the assured was sold at auction, and that the plaintiff in the suit on the policy became the purchaser, and on the same day he applied to the insurance company and obtained their consent in writing, indorsed on the policy that the interests of the assured in the policy might be assigned to him, and he subsequently took such an assignment in writing before the loss.

Right to the benefit of the policy was denied, because the purchaser did not disclose his interest when he applied to the company for their consent that the policy might be transferred, but the court held that the act of applying for consent that the policy might be assigned was notice to the company that the applicant had acquired or was about to acquire, some interest in the property insured.

Destitute as this case is of every feature of resemblance to that one, it hardly seems necessary to point out the differences. Suffice it to say, that in this case there was no application for consent that the policy might be assigned; no consent to that effect was ever given, nor did the assured ever execute any assignment of the policy.

Sale of the property by the assured without any antecedent consent of the company is proved and admitted, and of course the risk ceased and the policy became void at that time, unless the purchaser subsequently secured the consent of the company thereto, as required by the terms of the policy. Carpenter v. Providence Wash. Ins. Co., 16 Pet. [41 U. S.] 502; Foster v. Equitable Ins. Co., 2 Gray, 216; Grosvenor v. Atlantic F. Ins. Co., 17 N. Y. 391; Loring v. Manufacturers' Ins. Co., 8 Gray, 29.

The next inquiry is, what is the true meaning and legal effect of the indorsement in this case, to which the defendants consented through their secretary?

In the case of Grosvenor v. Atlantic F. Ins. Co., 17 N. Y. 391, the direct adjudication was that where a fire policy names the owner as the person insured, and declares that the damages in case of loss shall be payable to another person, therein named as mortgagee, the latter cannot recover in case of a breach of the conditions of the policy by the mortgagor. In such case the contract is with the mortgagor, and for the insurance of his interest, and the mortgagee can recover only where the mortgagor could have done so, had the money been payable to himself instead of being payable for his benefit to the mortgagee. Howard F. Ins. Co. v. Chase, 5 Wall. [72 U. S.] 516.

The present case is no stronger than those cases where the appointee to receive money in case the property of the assured is lost, is named in the policy itself instead of being appointed by an indorsement on the back. Neither such a stipulation in the policy nor such an indorsement on the back of the policy amounts to an assignment of the policy, or operates as a transfer of the property insured.

Decided cases to this point are quite numerous, and they are all one way. Hale v. Mechanics' Ins. Co., 6 Gray, 169; Young v. Eagle F. Ins. Co., 14 Gray, 153; Fogg v. Middlesex F. Ins. Co., 10 Cush. 337; Ketchum v. Protection Ins. Co., 1 Allen, (N. B.) 136; Loring v. Manufacturers' Ins. Co., 8 Gray, 29.

The argument of the plaintiff is, that the application to the defendants for consent that the sum insured in case of loss should be payable to him, was notice of the sale of the property and of the assignment of the policy; but it is clear that neither branch of the proposition can be sustained. Fogg v. Middlesex Ins. Co., 10 Cush. 348; Howard F. Ins. Co. v. Chase, 5 Wall. [72 U. S.] 516.

Viewed in any light, the plaintiff cannot recover. Purchase of the property insured was made by the plaintiff, but he did not procure the consent of the company to the sale, and they had no notice of the transfer prior to the loss. They consented, in case the property of the assured was destroyed, that they would pay the amount to the plaintiff, but they never consented that the policy should continue for the benefit of any one except the insured.

Verdict set aside.

[NOTE. In the report of this case as heard in the supreme court on writ of error, the statement is made that the secretary of the company defendant swore that he had no knowledge of the sale until after the loss. There was no evidence that any other officer of the company had notice of it other than as implied from their consent to the indorsement. In the course of the opinion of the court, Mr. Justice Miller referred to the very common use of similar indorsements as a mode of appointing that the loss of the insured shall be paid to a third person, thus furnishing a species of security to a creditor, and said: "In the face of this frequent use of the two indorsements on the policy, it cannot be held that they imply of themselves a knowledge of the sale, or a consent to insure the purchaser." As there was no evidence of usage or a course of dealing recognizing such indorsements as evidence of a sale, the judgment of the circuit court was affirmed. Bates v. Equitable F. & M. Ins. Co., 10 Wall. (77 U. S.) 33.]