MARY ELIZABETH RICHMOND, RESPONDENT, v. THE NIAGARA FIRE INSURANCE COMPANY, APPELLANT.

SAME v. REPUBLIC FIRE INSURANCE COMPANY.

SAME v. GERMANIA FIRE INSURANCE COMPANY.

THE COMMERCIAL NATIONAL BANK OF OSHKOSH, RESPONDENT, v. THE NIAGARA FIRE INSURANCE COMPANY, APPELLANT.

*Insurance policy — one to whom loss is payable, bound by breach of condition by the insured.*

Where a fire policy names the ostensible owner of the property as the person insured, and declares the damages payable, in case of loss, to another person, or when the policy is formally assigned to another person, and an action is brought by him, the person to whom the loss is payable, or the assignee, cannot recover, where the conditions of the policy have been broken by the assured.

Berry & Co., who owned a warehouse at Oshkosh, in which was stored some 15,000 bushels of wheat, in one mass, being desirous of borrowing $3,000, drew a draft upon one Richmond for that amount, and attached thereto a warehouse receipt, by which they acknowledged to have received from, and to hold subject to his order, 2,500 bushels of wheat, loss by fire and heating at owner's risk. Richmond paid the draft. Subsequently another draft, for the same amount, with another warehouse receipt attached thereto, was drawn upon, and paid by, Richmond. The 5,000 bushels were never separated from the rest, nor was any bill of sale made, but it was intended that the wheat should be kept in the warehouse to secure the payment to Richmond of the amount of the drafts.

After the execution of each receipt, Berry & Co. applied to, and obtained from, defendants' agent policies of insurance on the wheat to them as owners, one payable to whom it might concern, and the other to Richmond. The policies provided that, if the interest of the assured in the property was other than the entire, unconditional and sole ownership, it must be so represented; otherwise, the policy should be void.

In an action on the policies by the plaintiff, as executrix of Richmond, to whom they had been assigned after a loss by fire, *held*, that, at the time they were issued, the legal title was in Richmond, and Berry & Co. had only an equitable right of redemption, and that, by their failure to so inform the companies, the policies were rendered void.

APPEAL from a judgment in favor of the plaintiff, entered in Erie County upon the trial of this action by the court without a jury.

*Spencer Clinton*, for the appellants.

*A. P. Lanning*, for the respondents.

TALCOTT, P. J.:

This is an appeal from a judgment rendered at the Erie Circuit on a trial by the court without a jury.

The action is upon what is called an underwriter's policy issued by the Germania, Hanover, Niagara and Republic Fire Insurance Companies of the city of New York, whereby the said companies, each acting and contracting for itself, and not one for another, in consideration of one-fourth of the respective sums to be specified as premiums and indorsed thereon, did each insure A. C. Osborne, of Oshkosh, Wisconsin, for account of the respective persons therein after referred to as entitled to the benefit of the said policy, against loss or damage by fire, to the amount of one-fourth part of the respective sums, which, within the limits thereinafter mentioned, should be indorsed on the said policy, and specified in the column on the other side, headed "amount insured" upon such produce and other merchandise, whether hazardous, not hazardous, extra hazardous, situated or being in such storehouses or places, at or in the immediate vicinity of Oshkosh, Wisconsin, and for such period of time not exceeding one year, as should also be specified by way of indorsement thereon, in the appropriate columns for such purposes on the other side, and also specified in the certificate thereinafter mentioned. It being understood and agreed, that no sum greater than $50,000 should be insured under the said policy upon produce or merchandise which should be in any one storehouse or place at the same period of time; and it being further understood that the insurance thereby made should be for the benefit of the respective parties only whose names should be written on the other side in the column arranged for that purpose, and to whom a certificate of authentication by the general agent of the said insurance companies, specifying the name of such person, the amount and period of such insurance, the premium therefor, the goods insured and the place of their location, signed by the said A. C. Osborne, shall be issued simultaneously with the indorsement of the risk upon the said policy,

and at the time when he shall agree to permit such person to come in under the said policy.

The policy then went on to specify divers conditions as in an ordinary fire policy, and amongst other conditions was the following : "If the property be sold or transferred or any change takes place in the title or possession, whether by legal process or judicial decree or voluntary transfer or conveyance, * * * * or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, mortgagee, lessee, or otherwise, is not truly stated in this policy. * * * * If the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property, for the use and benefit of the assured, it must be so represented to the companies and so expressed in the written part of this policy, otherwise the policy shall be void."

Wm. M. Berry & Co. were in the occupancy of a storehouse and elevator in Oshkosh, known as the Northwestern Elevator, which they used for the purpose of receiving, storing, and elevating grain; and at the time of effecting the insurance sought to be recovered for in this action, the said Wm. M. Berry & Co., were the owners of, and had in store in said elevator 15,811 bushels of wheat of the value of $1.70 per bushel, and of the aggregate value of $26,878.70.

They were accustomed to issue what are known as warehouse receipts — such as that issued to Dean Richmond and hereinafter set forth, and borrowing money upon the same in different amounts from divers persons, and pledging said warehouse receipts as collateral security for the repayment of such loans.

During all this time the said 15,811 bushels of wheat lay in said elevator in one mass, in nowise separated or in any manner distinguishable so that the wheat specified in any one of such warehouse receipts could be distinguished from that specified in any other of such receipts; and, as we understand the case, the evidence and the findings at the trial show that the said Wm. M. Berry & Co. had issued warehouse receipts for wheat, in different amounts and at different times, to different persons, by which wheat in said elevator, purported to be held by said Wm. M. Berry & Co., subject to the order of the persons severally named

in the said warehouse receipts, and before the receipts hereinafter mentioned as issued to Dean Richmond, greatly in excess of the said 15,811 bushels which the said Berry & Co. had in said elevator. And there was no evidence or finding that the said Wm. M. Berry & Co. had any wheat elsewhere than in said elevator. Nor did it appear on said trial, or by the findings therein, that there was any excess of the value of said wheat, so previously pledged, over and above the amounts for which the said warehouse receipts, or the wheat mentioned therein, had been so previously pledged, so that there was under the control of the said Wm. M. Berry & Co. any wheat, or the right of redemption in any wheat, at the time when the insurances to recover which this action is brought purported to have been made and effected. If this be so, it is difficult to see that there was any property owned by Wm. M. Berry & Co., or in which they had any valuable interest at the time when the two policies on which this action is brought were issued to Wm. M. Berry & Co., upon which the policies could attach.

The finding that there was enough wheat in the Nortawestern Elevator, at the time in question, to be equal to the amount alleged to have been insured by the two policies in suit, is not sufficient, as, we think, to authorize a recovery of the amount insured by the two policies in question, when it also appears that the whole legal title to the same, with substantially all the equitable interest of Wm. M. Berry & Co., had been previously pledged to other parties. However that may be, it is probably unnecessary in this case to go into a minute investigation of the facts touching the question, as we think the policies, even granting that they would have been valid and effectual to the extent of their face, by reason of the fact that there was enough wheat in the Northwestern elevator at the time of their issue, and to which the policies were supposed to apply, to satisfy the claim of Dean Richmond for his advances to Wm. M. Berry & Co.

Dean Richmond was engaged in business in the city of Buffalo, and, on the 12th day of May, 1866, loaned William M. Berry & Co. $3,000, and, as security therefor, they issued to him a warehouse receipt, in the words and figures following:

'NORTHWESTERN ELEVATOR, }
" OSHKOSH, *May* 12, 1866. }

" Received in store, from Dean Richmond, twenty-five hundred bushels of wheat, subject to the order of Dean Richmond, upon the surrender of this receipt, loss by fire and heating at owner's risk.

" 2,500 bushels.

  " (Signed)     WM. M. BERRY & CO."

. On the same day, Berry & Co. drew on Dean Richmond for $3,000, to which the foregoing receipt was attached, and the draft was paid by Richmond on presentation. Thereafter, on the 19th day of May, 1866, said William M. Berry & Co. applied to said A. C. Osborne, to whom the said open or underwriter's policy had been issued, at Oshkosh, for insurance on wheat represented as belonging to them in the said Northwestern elevator, to the amount of $3,000, for one month from that date, the loss, if any, payable to whom it might concern; and thereupon the said A. C. Osborne, as agent of the said underwriting insurance companies, and in consideration of the sum of twelve dollars premium, paid to him for said companies, did indorse on said open policy the sum of $3,000, as the amount insured on wheat in said Northwestern elevator, for the period of one month from that day, for the benefit of the said William M. Berry & Co., and did then and there deliver to said Berry & Co. a certificate, duly authenticated, in which it was specified that the said William M. Berry & Co. were insured, by each of said underwriting insurance companies, against loss or damage by fire, to the amount of one-fourth part of said sum of $3,000 on wheat contained in the said Northwestern elevator, for the period of one month, from the 19th day of May, 1866, to the 19th of June, in the same year. On the 21st of May, 1866, Dean Richmond made a further loan to William M. Berry & Co. of the further sum of $3,000; and, as security therefor, they issued to him a warehouse receipt for 3,000 bushels of wheat in the said elevator; which receipt was, in all respects, except as to date and quantity, the same as that above set forth; and, on the same day, drew a draft on said Richmond for $3,000, to which the receipt of that date was attached, and which draft was paid by the said

Richmond on presentation; and, on the 23d of May thereafter, the said William M. Berry & Co. applied to the said A. C. Osborne for a further insurance of $2,000 on wheat in said elevator, for one month from that date, loss, if any, payable to Dean Richmond; and a certificate was duly issued to the said William M. Berry & Co. similar to the certificate issued in the former case, except that it contained a statement that the loss, if any, should be payable to Dean Richmond; but William M. Berry & Co. were named in the indorsements on the said policy as the parties insured.

Dean Richmond did not, in fact, supply any of the wheat mentioned in either of the said receipts, nor was there any bargain and sale of the wheat mentioned therein to said Richmond, as buyer, but it was understood and intended, between William M. Berry & Co. and Richmond, that the latter held the said warehouse certificates, and the wheat therein mentioned, as security for the money so advanced by said Richmond to William M. Berry & Co.

At the time the said warehouse receipts were issued and delivered to said Richmond, Berry & Co. had wheat in the said elevator in excess of the amounts mentioned in the said warehouse receipts; but the same was in bulk, and in no manner was it separated, or set apart, or otherwise identified as the wheat which was referred to in the said warehouse receipts.

On the 25th day of May, 1866, the said Northwestern elevator, together with the said 15,811 bushels of wheat therein contained, was destroyed by fire, and the value of the wheat so destroyed was $26,878.70. William M. Berry & Co. duly assigned the said certificate of insurance, dated the 19th day of May, 1866, to said Richmond, and delivered to him the said two certificates issued on the said open or underwriter's policy in his life-time. Richmond died August 27, 1866, leaving a will, whereby he appointed the plaintiff sole executrix, which will was duly admitted to probate, and this action was afterwards commenced, whereby the plaintiff, as such executrix, sought to recover of the defendant the one-fourth part of the total amount insured in said two certificates of insurance issued under and upon said open policy.

The court found, as one of its conclusions of law, that, "as between William M. Berry & Co. and Dean Richmond, the title to the wheat mentioned in said receipts was transferred to Rich-

mond, in trust, as a security for the payment of the money loaned by him to William M. Berry & Co., in the nature of a pledge or mortgage, with the equitable right of redemption in William M. Berry & Co., on payment to him of the money so loaned and advanced by him thereon, with interest," and the court ordered a judgment for the plaintiff, as executrix, for the one-fourth of the amount so insured, with interest, amounting in all to the sum of $2,241.67.

In its answer, the defendant, among other defenses, set up a breach of the condition in said policy, that, if the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property insured, for the use and benefit of the assured, it must be so represented to the companies in said policy named, and so expressed in the written part of the said policy; otherwise, the policy should be void. William M. Berry & Co. were the parties insured by the certificates issued under the said open policy, and were therein named as the owners of the property insured. Where a fire policy names the ostensible owner of the property as the persons insured, and declares the damages payable, in case of loss, to another person, the latter cannot recover in case of the breach of the conditions of the policy by the party insured; and the same is true where the policy itself is formally assigned and an action for the loss is brought by the assignee. Richmond was not the party insured, nor was his interest covered by the policy. He was in the one case the assignee of the policy; and, in the other, the appointee to receive the amount of the loss, if any became payable. This rule is fully established in this State. (See *Grosvenor* v. *The Atlantic Fire Ins. Co.*, 17 N. Y., 391; *Buffalo Steam Engine Works* v. *The Sun Mut. Ins. Co.*, id., 401, and *Van Alstyne* v. *The Ætna Ins. Co.*, 14 Hun, 361.) The appointee to receive the money, in case of a loss, or the assignee of the policy, can only claim through the contract, and under and by virtue of its stipulations and conditions.

The learned justice who decided the case at the Circuit fully acknowledges the principle in his opinion, which is contained in the case, in treating of the question as to what were the respective rights of Richmond and Berry & Co. growing out of the warehouse receipts.

It is found, as a fact in the case, that the business was in the order in which the several papers bear date; that is to say, that the insurance was obtained, and the certificates under the open policy issued, in each case, after the wheat specified and insured thereby had, by Berry & Co., been hypothecated or pledged to Richmond for the payment of the money advanced to them by him. There was no statement of that fact, in any manner, by Berry & Co., when they applied for the insurance, nor was the fact that Berry & Co. had parted with the legal or any title to the wheat insured indicated upon the policy, or the certificates issued under the same; and Berry & Co., it appears by their proofs of loss, represented themselves as the sole owners of the wheat destroyed.

Wholly irrespective of any question of fraud in obtaining the policy or in the proof of loss, we are unable to see why an insurance thus obtained, as upon the absolute property of Berry & Co., is not within the condition adverted to, which requires that if the interest of the assured, in the property insured be any other than the entire, unconditional, and sole ownership of the property, for the use and benefit of the assured, it must be so represented to the underwriting companies, and so expressed in the policy.

The importance to the underwriters of insisting on a compliance with this condition is obvious, and is illustrated by the facts of this case. Berry & Co., had, as we understand the facts of the case, a quantity of wheat in their elevator in bulk, on which they had largely over-issued warehouse receipts, and pledged them from time to time to various persons as securities for money borrowed. They procured insurances on the amount of the wheat specified in the several warehouse receipts, in their own names and for their own benefit, no statement being made in the policy that the only interest of Berry & Co., in any of the wheat insured, was only that of pledgors or mortgagors of the property; and it does not appear that the policies were transfered in all cases to the pledgees or mortgagees. Under such circumstances, the temptation to fraud and the opportunity for its commission, greatly increased the "moral hazard" of the risk taken by the insurance companies, so that without any imputation of actual fraud in this case, it is easy to see that a faithful observance of the con-

dition specified might be of great importance to the underwriters in several aspects of the case.

The learned justice who tried the case at the Circuit, we see, states in his opinion that, "in none of the documents, making the contract of insurance between Berry & Co. and the defendant, is it stated directly or informally, that the assured had the legal and entire ownership of the property."

We think the learned justice overlooked or misunderstood the force of the condition relied on as a defense. The defense is not based upon the allegation of any false statement as to the ownership, but upon the omission to state fully and truly the situation of the property insured in that respect, and insuring the property as absolute owner, when in point of fact the insured was only the mortgagor, and had only the right of redemption in the wheat insured. We think, for this reason, that the judgment must be reversed.

Present — Talcott, P. J., Smith and Hardin, JJ.

In each of these cases judgment reversed and new trial granted, costs to abide event.