Price, J.
While the action under review was brought by Bridget Corrigan (now Bridget Cullen), who is one of the plaintiffs in error, it is developed in the record that her interest in the results of the litigation are not in dispute, inasmuch as the controversy is waged between the *16 insurance company and The Erie Brewing Company, the holder and owner of the mortgage set up in its answer and cross-petition. In her petition she counts on her ownership of the insured property; pleads and sets out the policy of insurance and alleges generally that she performed all the conditions made incumbent on her to be performed by the terms of the policy, and that after receiving due proofs of loss and damage by fire the insurance company refused to pay such loss and damage. Her prayer for recovery is for the full amount of the policy, $1,750.
Nothing is said in the petition about a mortgage clause; and The Erie Brewing Company is made a party because it claims some interest in the insured property by reason of a mortgage on the same; and nothing is said about any difference between her and the insurance company as to the amount of loss and damage, and nothing about an appraisal and an award. The Erie Brewing Company in its answer and cross-petition sets out its ownership of the mortgage and note secured thereby, which ownership came by assignment from Bridget Gaffney, the mortgagee. The terms and conditions of the mortgage are alleged, as well as the substance of the policy of insurance issued by The Ohio Farmers Insurance Company, and the so-called mortgage clause is copied as part of said answer and cross-petition. This clause appears in the statement made of the case preceding this opinion. It is alleged that the building insured was damaged to the extent of $2,449.20, for the one-half of which (there being concurrent insurance) it prayed judgment.
*17 Nothing is said in this pleading about a difference between the insured and the company as to the loss or damage; and nothing as to proofs of loss having been made by any one, and nothing as to any demand for an appraisal of the loss, it being assumed by the pleader, as we suppose, that these were acts to be done by the mortgagor, a neglect of which by the mortgagor, according to the terms of the mortgage clause, would not invalidate the insurance.
When we look to the amended answer of the insurance company to the cross-petition of the brewing company, we find it pleading so much of the policy as provides that it was agreed therein by the insured and the insurance company, that in the event of disagreement as to the amount. of loss, the same should be ascertained by two competent and disinterested appraisers, the insured and the insurance company each selecting one, and that the two so chosen to first select a competent disinterested umpire; that these appraisers should estimate and appraise the loss, and they failing to agree should submit their differences to the umpire, the award in writing of any two shall determine the amount of such loss.
It is alleged that the insured and the insurance company did differ as to the amount of the loss and damage on the insured building, and that on May 3, 1904, this company and the company issuing the concurrent insurance agreed in writing with the insured to submit the question of loss and damage to certain appraisers, which was done after the selection of an umpire, and that the award made in pursuance of the terms of the *18 policy was in the sum of $1,202.05. This award was reduced to writing, and that the insurance company was not liable for more than one-half of said award.
It is not averred in this defense that the owner of the mortgage — The Erie Brewing Company— had any notice or knowledge of the differences between the insured and the insurance company as to the amount of the loss, or that -the brewing company had notice or knowledge of the time and place of the appraisal and award. It is not averred that it was present or took part in said submission and appraisal. The court of common pleas sustained a demurrer to this defense, which judgment the circuit court reversed, and that ruling gives rise to the principal controversy in this proceeding.
Is the appraisal and award thus made binding on the owner of the mortgage where such owner does not assail the award for fraud or collusion? We find the authorities are not in harmony on the question. .The decided cases are in serious conflict, but many of them adjudicate controversies unlike the one before us, while others are more directly in point. The legal status of the so-called mortgage clause has been differently defined by courts and text-writers, some of which hold that it is a' new and independent contract, not controlled necessarily by all the provisions of the policy, while others hold that such clause is - a designation or appointment of the mortgagee as the party to share in or receive the amount of the loss and damage.
It must not be overlooked that there was no assignment of the policy in this case. There was *19 no assignment in terms of any part of it. The clause designates a payee to receive the fruits of the policy — fruits that will 'accrue by reason of its protection and the rights secured thereby by the express language of the policy. There is nothing in it concerning differences between the company and mortgagee as to the amount of loss and damage; and nothing making it incumbent upon the mortgagee to furnish proof of loss. The clause in question is careful to provide, “and this insurance as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings, or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall on demand pay the same. Provided also, that the mortgagee shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee, and unless permitted by this policy, it shall be noted thereon and the mortgagee shall on demand pay the premium for such increased hazard for the term of use thereof, otherwise this policy shall' be null and void.”
It seems that clause expresses what will not invalidate the policy as to the mortgagee, and creates an obligation on his part, if he have knowledge of change of ownership or occupancy, or in *20 creased hazard, to notify the insurance company of the same, and if the hazard is increased by the change, the premium for the increased hazard shall on demand by the company be paid, or the policy be void. In all other respects, not excepted by the clause, the rights of the mortgagee ■ depend on a compliance with the terms of the policy by the insured mortgagor. The premium is due from the insured and only where he neglects to pay it may the insurer demand its payment of the mortgagee.
In this language it is to be further. observed that the clause does not vest in the mortgagee any additional title or interest in the insured property, for it says: “Loss or damage, if any, under this policy shall be payable to The Erie Brewing Company as mortgagee as interest may appear, and this insurance as to the interest of the mortgagee only therein shall not be invalidated,” etc.
It would appear reasonable that in respects not modified or limited by the express language of this mortgage clause, the plain provisions of the policy as between the insured mortgagor and the insurance company must prevail and be observed. The rights conferred by the clause spring from the contract relation which the mortgagor sustains to the company, and but for saving words in the clause, the neglect or default of the insured might defeat the interests of both.
Llere we have in the policy the unequivocal provision that: “In event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and dis *21 interested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine such loss.”
This is a part of the body of the policy and it has been uniformly held that a compliance with the conditions is a prerequisite to recovery on the policy, and this mortgage clause, although on a separate paper, is of same date as the mortgage and attached to the policy at the time of its execution. Hence it was not intended to be a new and separate contract between the insurance company and the mortgagee, but to designate or appoint the payee of the amount of loss according to the interest in — not the property insured — but in the insurance which he may make appear. Such clauses for convenience perhaps are not contained in the forms of the principal contract of insurance between the insured and the company, but pre-' pared on a separate sheet in order that in a proper case it may be attached, and when this is done, it does not waive or destroy any express provision of the policy, but serves its purpose by designating the payee when loss occurs and modifies the principal contract only to the extent that a modification or qualification is clearly expressed therein.
This view leads to the conclusion that the principal contract must be observed, except as expressly modified, and that the rights of the mortgagee depend upon and must be. worked out *22 through the relation the insured sustains to the insurance company, that relation being one of solemn primary contract.
Therefore an arbitration was in order where the principal parties could not agree. There is. no provision in the mortgage clause that recognizes his right to select or be present when an appraiser is selected. That method of determining the loss is fixed in the policy and remains there after the mortgage clause is attached, and there is nothing in it which in any degree qualifies the authority for appraisal existing between the principal parties. And surely there could not be two appraisals one according to the policy between the insured and the insurance company, and another at the behest of the mortgagee. There is nothing in the mortgage clause that provides notice of appraisal to the mortgagee. Two appraisals might not be for. same amount and the situation would be unique. The present question, as we are now advised, has not heretofore been passed upon by this court, but our views find support in several well considered cases decided in other jurisdictions.
In Fogg and another v. Middlesex Mutual Fire Ins. Co., 10 Cushing, 337, it is held an indorsement on a policy of insurance, “for value received, pay the within, in case of loss to F. and H.,” made to a purchaser of the property insured, is rather an order of or assignment of a right to the money in case of loss, than a regular transfer of the contract of insurance.
After discussing other forms of assignment of insurance, Shaw, C. J., on page 346, says: “But there is another species of assignment or transfer *23 it may be called, in the nature of an assignment of a chose in action; it is this: Tn case of loss, pay the amount to A. B3 It is a contingent order or assignment of the money, should the event happen- upon which money will become due on the contract. If the insurer assents to it, and the event happens; such assignee may maintain an action in his own name, because, upon notice of the assignment, the insurer has agreed to pay the assignee instead of the assignor. But the original contract remains: the assignment and assent to it form a new and derivative contract out of the original. But the contract remains as a contract of guaranty to the original assured. He must have an insurable interest in the property, and the property must be his at the time of the loss. The assignee has no insurable interest prima facie in the property burnt and does not recover as the party injured, but as the assignee of a party who has an insurable -interest, and a right to recover, which right he has transferred to the assignee, with the consent of the insurer.”
The same view is adopted by the same court in Minturn v. Manufacturers' Insurance Co., 10 Gray, 501.
In Grosvenor v. The Atlantic Fire Ins. Co., 17 N. Y., 391, it is held that, “where a fire policy names the owner of the property as the one insured, and declares the damages in case of loss to be payable to another person therein named as mortgagee, the latter cannot recover in case of a ^breach of the conditions of the policy by the mortgagor. In such case, the contract is with the mortgagor, and for the insurance of his interest, *24 and the mortgagee- can recover only where the mortgagor could have done so, had the money been payable to himself instead of being payable for his benefit to the mortgagee.”
In Hathaway v. Orient Ins. Co., 134 N. Y., 409, the preceding case with others was considered and distinguished, but its doctrine was not overruled.
Atlas Reduction Co. et al. v. New Zealand Ins. Co., 138 Fed. Rep., .497, is a leading case decided by the circuit court of appeals of the United States. The substance of the holding is, that where an indorsement was made on a policy of fire insurance, by the agents of the insurer, at the request of the insured, to-wit: “Subject to all the conditions of this policy, loss, if any, payable to D. and S. as their interests may appear” — the indorsement must be read in the light of the purpose which actuated the parties in stipulating that the policy could be modified, or any provision thereof waived, only by a writing of equal dignity and credit with the policy itself. Such an indorsement is a common mode of furnishing a species of security by a debtor to his creditor, who may be willing to trust to the debtor’s honesty, etc., but who requires some indemnity against such accidents as loss by fire, and it does not create a new contract of insurance with the payee, or abrogate or waive any condition of the policy. The terms of the indorsement are not conflicting, but consistent and plain, and their purpose and effect are to make D. and S. the simple appointees of the insured to receive payment of any loss payable to the insured under the policy, and to receive it, not absolutely, but to the extent of any interest they *25 may have in such payment at the time of the loss. The words ‘as their interest may appear/ are -plainly prospective, and refer to the interest, not in the property insured, but in the payment of the loss.” That court was somewhat divided on some questions in the case, but we think not on the proposition above stated.
We content ourselves with consideration of another case, although others are cited in brief for defendant in error. In Chandos et al. v. American Fire Ins. Co., 84 Wis., 184, omitting part of the syllabus, we quote from the third section: “A mortgagee to whom the insurance is made payable ‘as her interest may appear’ is bound by the appraisement or award, although she was not a party to and had no notice of the proceedings.” The opinion of the court is a thorough discussion of this and other subjects and is valuable for the array of authorities cited.
On page 191, the court says: “That the mortgagee was not a party to the appraisement, and had no notice of it, is an objection of much more importance. All of the insurance policies contain the same direction of ‘loss payable to Louisa W. I. Goff, the mortgagee, as her interest may appear.’ To determine whether she was entitled to all the insurance, all of the policies of insurance must be considered together as one policy and at the time the loss occurred, and not since it has been determined in this case whether the loss is less or more than the mortgage. To determine the question whether the mortgagee ought to have had notice of the appointment of appraisers, and to have been a party to the appraisement, it is im *26 portant to know whether at that time it appeared that she was entitled to the whole insurance. Nearly all, if not all, the authorities cited by the learned counsel of the respondents, which hold that the mortgagee is the sole party in interest in the insurance, and must be represented in the arbitration or other adjustment of the loss, are cases where the direction is. to pay the zvhole insurance to the mortgagee or other third person, who thereby becomes the assignee of the policy and loss. In this case it could not be known what interest the mortgagee might have in the insurance, or what interest in her might appear. First, her interest was not commensurate with the insurance; second, it was not known what part, if any, of the mortgage would remain unpaid by the mortgagor. It was therefore uncertain what interest the mortgagee had, if any, in the insurance. She (the mortgagor) was the owner of the property and of' the equity of redemption in the mortgaged premises. * * * It follows that in all cases where the language of direction is that the insurance should be paid to the mortgagee ‘as his interest may appear/ the assured mortgagor remains the responsible party, or the party in interest to control the insurance and the adjustment of the loss. This is the distinction, as I understand it, which divides the authorities on the question.”
This logic applies to the case at bar, for the policy and clause under consideration was not an assignment of all the insurance, nor of the insurance policy. The insurance given by this policy is $1,750, and concurrent insurance in same amount — $3,500. The mortgage debt at date of *27 policy was less than $2,500. The sound value of the insured property, as fixed by the appraisal, was $4,000, and the loss $1,202.05.
There are some cases that seem to hold contrary to our views and they are cited for plaintiff in ertor in its brief. We have examined these cases, but have not space for their discussion here.
We concur in the decision of the circuit court and affirm its judgment.

Judgment affirmed.

Crew, C. J., Summers, Spear, Davis and Shauck, JJ.; concur.